UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALICIA M.,

          Plaintiff,

   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

CASE NO. 3:22-CV-5012-DWC

ORDER REVERSING AND REMANDING DECISION TO DENY BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of Plaintiff's applications for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before United States Magistrate Judge Christel.

## BACKGROUND

Plaintiff proactively applied for Supplemental Security Income and Disability Insurance Benefits on January 11, 2019 and January 30, 2019, respectively. AR (Administrative Record) 209-216. In both applications she alleged a disability onset date of March 1, 2017. AR 18.

Plaintiff's applications were denied initially on July 18, 2019, and upon reconsideration on March 13, 2020. AR 131-139, 147-148. After Plaintiff requested a hearing, an Administrative Law Judge (ALJ) conducted a telephonic hearing[1] on December 7, 2020, during which she was represented by an attorney. AR 34-68.

At the hearing Plaintiff stated that she quit her job as a Certified Nursing Assistance (CNA) because it required her to stand for long periods of time causing blood to pool in her feet, which in turn caused difficulty thinking as well as body weakness. AR 22. Plaintiff testified that working as a CNA required her to move patients, causing her joints to almost dislocate. *Id*. Plaintiff testified that at the time she quit this job, symptoms related to POTS and Ehlers-Danlos syndrome caused such severe stress to her body that her immune system became compromised and she suffered recurrent infections. *Id*.

Although her symptoms have remained the same, Plaintiff testified that she is now better able to manage them by resting for several days before and after going out and doing things. *Id*. For instance, Plaintiff testified that she can still work very part-time as a dance instructor by resting the days before and after she dances, and giving herself a lot of time to get ready in the morning. AR 23. Plaintiff explained that also she is not always able to meet all of her commitments, and typically she does not make commitments that begin before 1:00pm. *Id*.

Plaintiff testified she has approximately 15 bad days per month, punctuated by difficulty following conversation, forming sentences, walking, climbing stairs, or even lifting a gallon of milk. *Id*.

---

[1] Due to the extraordinary circumstances presented by the Coronavirus, or COVID-19, pandemic, the hearing was conducted telephonically.

The ALJ issued his written opinion on January 12, 2021 denying Plaintiff's claim. AR 15-33. Plaintiff then filed a Request for Review of Hearing on February 22, 2021. The Appeals Council denied Plaintiff's request for review on November 18, 2021, making the ALJ's decision the final decision of the Commissioner. AR 1-6, 206-208; 20 C.F.R. §§ 404.981, 416.1481.

## THE ALJ's FINDINGS

The ALJ issued an unfavorable decision on January 12, 2021, in which she concluded that Plaintiff suffered from the severe impairments of episodic, brief tachycardia with Ehlers-Danlos syndrome; asthma; and postural orthostatic tachycardia syndrome (POTS). AR 21. The ALJ determined Plaintiff's depression was not a medically determinable impairment. *Id*.

The ALJ determined Plaintiff retained the following Residual Functional Capacity (RFC):

> to perform light work … except that she is limited to: standing and or walking for two hours and sitting for a total of about six hours in an eight-hour-workday; and understanding and carrying out simple instructions consistent with a general educational development ("GED") reasoning level one or two.

AR at 22.

The ALJ accepted the vocational expert testimony to conclude that Plaintiff remained capable of performing substantial gainful employment doing jobs such as routing clerk, office helper, or electrical accessories assembler. AR 27.

## STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of

harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

## DISCUSSION

Plaintiff's principal claim is that the ALJ's RFC assessment is not supported by substantial evidence as it improperly rejects both Plaintiff's testimony and medical evidence that her impairments impose limitations precluding the ability to sustain full-time work. Dkt. 10 at 2.[2]

A claimant's RFC is the most she can still do despite her physical or mental limitations. 20 C.F.R. § 416.945(a)(1). When assessing a claimant's RFC, the ALJ must base the assessment on all of the relevant evidence, including medical records, observations of physicians, and the claimant's own descriptions of her limitations. 20 C.F.R. § 416.945(a)(3).

Here, according to Plaintiff, the ALJ improperly rejected compelling evidence that she experiences fatigue and pain almost immediately after exerting herself, requiring her to rest and recuperate for many days thereafter before resuming any significant level of activity. Dkt. 10 at 3. As a result, Plaintiff contends she is only able to work part-time, and even then her scheduled attendance cannot be guaranteed due to the unpredictability of her co-morbidities. *Id*.

---

[2] Plaintiff also disputes the ALJ's step two finding that depression was not one of Plaintiff's medically determinable impairments. Dkt. 10 at 1.

The Commissioner insists that even if some of the ALJ's reasons for finding Plaintiff not disabled are "improper" they are nonetheless harmless because the ALJ's determination is ultimately supported by substantial evidence. Dkt. 12 at 4.

For the reasons that follow this Court concludes that the ALJ committed harmful error by improperly rejecting some of the medical evidence, necessitating remand for further proceedings.

I.      Standard for Evaluating Medical Evidence

The regulations regarding evaluation of medical evidence have been amended for claims protectively filed on or after March 27, 2017, such as this one. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). In the new regulations, the Commissioner rescinded Social Security Regulation (SSR) 06-03p and broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263. The Commissioner also clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

Additionally, the new regulations state the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.152c(c); 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.152c(a), (b)(2); 416.920c(a), (b)(2).

Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion[3], the ALJ must still "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a), (b)(1); 416.920c(a), (b)(1). The ALJ is specifically required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

The supportability factor requires the ALJ to consider the relevance of the objective medical evidence and the supporting explanations presented by the medical source to justify their opinion. 20 C.F.R. § 416.920c(c)(1). Inversely, consistency involves a consideration of how consistent a medical opinion is with the other record evidence. 20 C.F.R. § 416.920c(c)(2).

## II.   Relevant Findings

Plaintiff contends the ALJ improperly rejected the opinions of treating Nurse Practitioner Katherine Moon, ARNP, FNP (Moon) and physical therapist Zane Smith, PT (Smith), and improperly credited the findings of Merry Alto, M.D. (Alto), Jan L. Lewis, Ph.D. (Lewis), and Renee Eisenhauer, Ph.D. (Eisenhauer). Dkt. 10 at 11. Both Moon and Smith opined that Plaintiff's functional capacity is severely limited by profound fatigue and pain caused by her impairments. AR 49-56, 676, 721-724. The ALJ concluded they were unsupported by their own examinations and inconsistent with the record as a whole.

---

[3] The Ninth Circuit recently held that "[t]he revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, ---F.4th ---, 2002, WL 1195334, at *6 (9th Cir. 2022). As a result, the Ninth Circuit concluded that the revised regulations displaced the longstanding case law requiring an ALJ to provide "specific and legitimate" reasons for rejecting a contracted physician's opinion or "clear and convincing" reasons for discrediting an uncontradicted physician's opinion. *Id.*

The Commissioner argues the ALJ properly resolved conflicting medical evidence to find Plaintiff's physical and mental impairments did not limit her functional capacity to the degree opined by Moon and Smith. Dkt. 12 at 4.

a. Smith

The Court elects to first discuss Smith's opinion, which he formulated following a "two-day Functional Capacity Evaluation" of Plaintiff—or FCE—conducted "at the request of Nurse Moon following Plaintiff's reported complaints of fatigue and pain after normal exertion." AR 24, 694-697. Smith stated that the purpose of the FCE was to confirm the impact of the first day's functional capacity testing on Plaintiff's day-two performance. AR 721. Smith stated his findings and opinions as follows:

> [Plaintiff's] sustained tolerance for work activity, including sitting or standing work are greatly limited. Based on her FCE performance she would likely perform well on day one and show reduced performance thereafter and would require multiple breaks per workday primarily due to profound fatigue and pain in the weight bearing joints. Additionally, her functional tolerance will regress proportionally with her level of fatigue. Based on the observed reduction in activity tolerance during the Functional Capacity Evaluation it is likely that her work tolerance would likely reduce overtime during a 5-day work week as each succeeding day would be increasingly difficult due to increased fatigue and increased pain. Moreover, it is also quite likely that she would require multiple days off work (est.>3-5) per month to recover from her work activities.

AR 723.

The ALJ concluded that Smith's opinion was not supported by his exam findings "which were grossly normal" and it is "highly equivocal, as evidenced by his repeated use of the term 'likely.'" AR 24. The ALJ also found Smith's opinion to be inconsistent with the record as a whole, which the ALJ interpreted to evince "grossly normal strength" "no notations of atrophy" "no evidence of problems with falls" no "provider recommended" walking assistive device and "no positive Romberg testing." AR 24.

b. <u>Moon</u>

The ALJ next discussed Moon's opinion, which took the form of both documentary and testimonial evidence as Moon provided clinical records as well as telephonic testimony at the administrative hearing. AR 25, 47-57.

Moon stated that she ordered the FCE testing after several years of treating Plaintiff because she wanted to obtain an accurate picture of Plaintiff's symptom escalation. AR 55. Moon testified that on one occasion before ordering the FCE she kept Plaintiff in her office for several hours and "tried to do everything I could to exhaust her, both mentally and physically" and observed her stamina quickly decline. AR 54-55. Moon said she observed multiple signs of fatigue and pain, as well as discoloration in Plaintiff's feet (due to blood pooling)[4] and frequent episodes of "near syncope". AR 49-57, 694-697.

Based on these tests and observations Moon opined that Plaintiff might have "eight to ten good days in a month," though she could not "tell that absolutely, for sure." However, on a "bad day" Moon opined that Plaintiff "could absolutely not do this, not even for half an hour." AR 47-56.

The ALJ discredited Moon's opinion for several reasons. First, the ALJ found Moon's opined limitations to be inconsistent with the record as a whole, which showed Plaintiff had "grossly normal strength," no atrophy or falling, no positive Romberg testing, and no provider-recommended assistive walking device. AR 25. Second, the ALJ discredited Moon's opinion that Plaintiff was precluded from "any job that required timelines[s]," and would at most be capable

---

[4] Notably, though, the ALJ did credit Moon's testimony that she had observed discoloration in Plaintiff's extremities "due to blood pooling", and cited this observation as justification for imposing greater limitations on Plaintiff's residual functional capacity than opined by the DDS consultant Guillermo Rubio, M.D.. AR 24-25.

of performing "limited parttime work" that was "completely flexible from day to day and week to week …" because such findings are reserved to the Commissioner. *Id.*; 20 CFR 404.1520b(c)(3)(i) and 416.920b(c)(3)(i). Nevertheless, the ALJ stated that even if she were to construe Moon's statements as "medical opinions" she would still discredit them because they were inconsistent with the record as a whole. AR 25.

      c. <u>Other Medical Evidence</u>

The ALJ credited Todd Bowerly, Ph.D. (Bowerly), who examined Plaintiff in July 2019 and observed that she had a slight reduction in attention, concentration, and mental processing speed, which most likely reflected interference from chronic fatigue and medical symptoms. AR 24. The ALJ stated that Bowerly's exam findings show the claimant demonstrated slightly reduced working memory and processing speed, placing her in the average range (Ex. 10F/6). AR 23. The ALJ further noted that the record was void of any mental health treatment records, and did not reflect a history of regular mental health symptom reports. *Id*.

Regarding Plaintiff's physical functioning, the ALJ deferred to the medical findings of Merry Alto, M.D. (Alto) who found, upon reconsideration review, the record was bereft of any evidence of joint dislocation that might be expected from Plaintiff's Ehlers-Danlos syndrome, that Plaintiff's asthma was controlled with medications, and that Plaintiff reported she was able to dance for work and pleasure up until January 2019. AR 25, 106, 110, 120, 124. Alto also concluded from her record review that Plaintiff had normal or only slightly reduced strength, no noted muscle atrophy, and neither a positive Romberg test nor a recommendation for an assistive device. AR 25, 331, 503, 634, 721.

As for Plaintiff's mental impairments, the ALJ deferred to the prior administrative findings of DDS psychological consultants Lewis and Eisenhauer that Plaintiff had non-severe

mental impairments was persuasive because the record showed Plaintiff had normal mood and affect on several examinations, showed mostly normal psychological evaluations and normal behavior, denied significant mental disturbances, and did not seek mental health treatment beyond medication management. AR 25, 77, 90, 331, 352, 391, 438, 465, 539, 541, 543, 546, 562, 581, 594, 601, 616, 689, 693, 709.

III.     Analysis

This Court finds the ALJ erred in her rejection of Moon and Smith's opinions. First, the ALJ did not cite to evidence in the record contradicting Moon and Smith's findings that Plaintiff's pain rapidly increased and her stamina rapidly decreased after mere hours. Instead, the ALJ's pointed to Alto's observation that the record did not reflect that Plaintiff had muscle atrophy, a positive Romberg test, or a prescriptive walking device. AR 25, 331, 503, 634, 721. Yet, the ALJ does not state that such findings are necessary to confirm rapid declines in stamina, or otherwise explain how the absence of such findings is relevant to Moon and Smith's clinical interpretations. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (an ALJ errs when she assigns a medical opinion "little weight while . . . asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for [her] conclusion").

Second, the ALJ's determination that Moon and Smith's opinions were equivocal because they employed phrases such as "likely" rather than offering exact numbers of days Plaintiff would be absent from work, for instance, is not supported by substantial evidence, particularly given their certitude that prolonged activity causes Plaintiff's functional capacity to rapidly decline requiring several rest days per month. *See e.g.*, AR 723. The Court also notes the

1  ALJ provided no analysis to reject their opinions on the impact prolonged activity has on

2  Plaintiff's functional capacity.

3        Third, the ALJ's conclusion that Moon and Smith's opinions were inconsistent with the

4  record as a whole is not supported by substantial evidence. The ALJ credited Alto's assessment

5  that Plaintiff's physical limitations were due to her fatigue and pain caused by connective tissue

6  disease and asthma (AR 108, 109, 122, 123) and Bowerly's assessment that Plaintiff's reduced

7  working memory and processing speed "may reflect the influence of chronic fatigue and/or

8  medical symptoms." AR 684. Not only are these conclusions consistent with Moon and Smith's,

9  they predate Moon and Smith's opinions which were issued in the later part of 2020 and never

10  reviewed by a medical consultant. AR 99-126. Moreover, Smith was the only medical provider

11  of record who had the opportunity to administer a comprehensive evaluation of Plaintiff's

12  symptoms over consecutive days in order to test her stamina. Rather than dismissing Smith's

13  FCE testing results as inconsistent, the ALJ could have resolved her perceived inconsistency by

14  ordering a consultative examination by a specialist in connective tissue disorders. *See Reed v.*

15  *Massanari,* 270 F.3d 838, 841 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1519, 416.919)

16        In sum, this Court finds the ALJ failed to properly apply the supportability and

17  consistency tests to Moon and Smith's opinions. *See* 20 C.F.R. §§ 404.1520c(b)(2);

18  416.920c(b)(2).

19        Plaintiff asks this Court to remand her case to the Commissioner for further proceedings,

20  which the Commissioner agrees would be the appropriate course of action should the Court

21  detect harmful error. Dkt. 10 at 18; Dkt. 12 at 15.

22        "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*, 674

23  F.3d 1104, 1115 (9th Cir. 2012). An error is harmless, however, only if it is not prejudicial to the

24

claimant or "inconsequential" to the ALJ's "ultimate nondisability determination." *Id.; see also Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The Ninth Circuit has stated "'a reviewing court cannot consider an error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). The determination as to whether an error is harmless requires a "case-specific application of judgment" by the reviewing court, based on an examination of the record made "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)).

This Court finds the ALJ's errors were harmful because had she given proper consideration to Moon and Smith's findings and opinions she would likely have included in the RFC, for example, the limitation that Plaintiff would be absent from work more than the allowable amount permitted by employers. *See* AR 66.

On remand, the ALJ is instructed to obtain medical expert testimony, including a consultative examination if necessary, and evaluate the effects of Plaintiff's Ehlers-Danlos syndrome, in combination with her other impairments, on her residual functional capacity." Since the ALJ's reconsideration of the medical evidence may impact her assessment of Plaintiff's subjective symptom testimony, the ALJ must also reconsider Plaintiff's testimony on remand, and reassess the sequential evaluation. *See* 20 C.F.R. § 404.1529(c).

## CONCLUSION

For the foregoing reasons the Court hereby finds the ALJ improperly concluded Plaintiff was not disabled. Accordingly, this matter be REVERSED and REMANDED to the

Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order.

Dated this 14th day of July, 2022.

David W. Christel
United States Magistrate Judge